



FILED

MAY - 3 2019

CLERK'S OFFICE
DETROIT



16-13971

## PLAINTIFF'S BRIEF IN OPPOSITION TO SUMMARY JUDGMENT

Written and submitted by Plaintiff James Blau, in pro per

Mailed April 29, 2019

**SUPPLEMENTAL BRIEF IN OPPOSITION TO SUMMARY JUDGMENT**

**INDEX**

Background...............................1

Defendant Angela Fortescue...............3

     Evidence of Fortescue's

     Deliberate Indifference.............4

     Eastern District precedent..........4

     Why Fortescue's Argument

     Does Not Apply......................5

Defendant Heidi Washington...............7

     Washington's Direct Involvement.....7

     Two Questions of Material Fact......8

     MDOC Director is Liable for

     MDOC Policies.......................8

     Question of Material Fact...........9

     Policy Does Not Provide Diet

     for CAD Patients...................10

     Question of Material Fact.........11

Relief Requested........................12

Exhibits A-E.........................13-17

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF MICHIGAN

------------------------------------------------------------

James E. Blau

    Plaintiff,

V.

                         Case No. 2:16-cv-13971

Angela Fortescue &amp;          Hon. Arthur J. Tarnow

Heidi Washington           Mag. Elizabeth A. Stafford

        Defendants.

------------------------------------------------------------

James E. Blau #214995       Eric M. Jamison
Lakeland Correctional Facility  Assistant Attorney General
141 First Street           State Operations Division
Coldwater, MI 49036         P.O. Box 30754
                             Lansing, MI 48909

------------------------------------------------------------

### SUPPLEMENTAL BRIEF IN OPPOSITION TO SUMMARY JUDGEMENT

#### BACKGROUND

    1. On June 5, 2016, after months of severe unstable angina, Plaintiff Blau had a consultation with cardiologist Dr. Cathy Glick. Dr. Glick ordered a heart catheterization and a low fat, low cholesterol, low sodium diet for Blau.

    2. On June 15, 2016, Blau suffered a severe myocardial event and underwent an emergency heart surgery where a 90% blockage was discovered in his right coronary artery. Cardiovascular Surgeon Jonovich diagnosed athersclerosis (CAD: coronary artery disease), placed a stent in the blockage, and ordered a low fat, low cholesterol 2000mg sodium diet, supported and seconded by Michigan Heart Team

Doctor Rashid on Blau's discharge orders. (Attached Exhibit A; and Doc#13, Pg ID 193).

3. Upon returning to the JCF prison, Blau requested this specialist-ordered diet. JCF Dietician, Defendant Angela Fortescue reviewed Blau's medical file and, based on her expertise, denied Blau this diet (Doc#13, Pg ID 197), thus forcing him to continue eating the high fat, high cholesterol main line diet or suffer from lack of nutrition. (See attached Exhibit B, and Doc #14, Pg ID 366-402.)

4. By October 2016, Blau again suffered daily from unstable angina, which caused severe chest pain, headaches, jaw & neck pain, shortness of breath, shoulder pain, dizziness, nausea and syncope (passing out when standing up too quickly). (Pg. ID 209-213)

5. After nine months of daily pain and suffering, in July 2017, Blau underwent another heart surgery and a stent was placed in a 80% blockage in his "widowmaker" artery. Operating surgeon, Doctor Elizabeth Pielsticker, ordered a "vegan, low fat, low cholesterol, 2000mg" diet. (See enclosed Exhibit A)

6. In February and March 2018, Blau suffered three strokes (transient ischemic attacks), during which he lost feeling, strength, and mobility on his left side for more than two days and temporarily lost vision for several hours. (See Exhibits for Motion to Supplement Reply (Doc#58)).

7. A subsequent MRI determined that brain hemorrhage was not the cause, meaning that these strokes were caused by clot particles breaking off from Blau's heart blockages and getting caught in his brain, an  event   which means the chances of recurrence and serious

SUPPLEMENTAL BRIEF, PAGE 2

permanent damage have increased dramatically.

8. In April 2018, cardiologist Dr. Cathy Glick examined Blau and diagnosed the strokes, referring Blau to a neurologist and again ordering the low fat, low cholesterol diet, which should consist "predominantly of fruits and vegetables and lean unbattered protein." (Exhibit A)

9. During this period described above, Blau self-regulated his diet and dropped 33 pounds, from 218 to 185 pounds. (See Exhibits for Motion to Supplement Reply (Doc#58))

10. Today, Plaintiff Blau continues to suffer from CAD and it's painful symptoms, including angina, which he treats with medications, including nitroglycerin.

------------------------------------------------------------------

## DEFENDANT ANGELA FORTESCUE, REGISTERED DIETICIAN

------------------------------------------------------------------

No exhaustion defense was raised for Fortescue.

Blau has raised several relevant issues of material fact for a jury to decide as to whether Fortescue violated Blau's clearly established 8th Amendment right.

Blau has provided the therapeutic diet orders of several cardiovascular specialists. See Exhibit A.

Blau has provided medical record documentation that Fortescue reviewed Blau's medical file and made her own medical determination to supercede and deny the specialists' orders. (Doc#13, Pg ID 197)

Fortescue has admitted in her affidavit (Doc#11-2, Pg ID 51) that she is not a cardiovascular specialist or expert. She has admitted in that same affidavit that she is not even a doctor,

SUPPLEMENTAL BRIEF, PAGE 3

physician's assistant, or nurse. Her opinion is NOT a medical
opinion, and in no way qualifies as a "disagreement between medical
professionals." Despite her limited training in nutrition, she
admits by omission that she has no training in cardiovascular
nutrition, which is a separate specialty usually practiced in
cardiovascular health clinics, such as the Cleveland Clinic or U
of M. This dispute is between several highly trained, experienced
cardiologists (who all agree with each other) and a non-medical MDOC
staffer--not a difference of opinion between highly trained medical
peers.

Blau has provided evidence--in medical documents and properly
written declarations--that Fortescue was deliberately indifferent
to his serious medical needs:

> (1) Blau had serious medical condition (coronary artery disease; Doc #13;
> Pg ID 193-195);
> (2) Fortescue knew of this condition and the serious risks to Blau's health
> (Pg ID 197);
> (3) Fortescue knew of the specialists' orders and the risks of ignoring
> or denying these orders; and
> (4) Fortescue denied Blau's medical treatment (therapeutic diet).
> (5) The mainline diet is high in fat and cholesterol.

### RELEVANT CASE LAW FROM THE EASTERN DISTRICT OF MICHIGAN

Judge David Grand ruled that Plaintiff Hodges raised issues
of material fact where the Defendant ignored specialists' orders
in Hodges v. Corizon 2016 U.S. District LEXIS 97349, Eastern District.
In support, Judge Grand followed another E.D. Michigan case Rhinehart
v. Scutt 2014 U.S. Dist LEXIS 150229, at *20-21, where the Court
refused to dismiss the plaintiff's deliberate indifference claim,
noting that "Evidence that a prison doctor ignored an outside
specialist's instructions for a prison inmate is sufficient to survive

a motion for summary judgment on a deliberate indifference claim"
(quoting Weeks v. Hodges 871 F. Sup 2d. 811, 821 (N.D. Ind 2012).
[See NOTE below.]

Both these cases followed a 7th Circuit case, Gil v. Reed, 381
F.3d 649 (7th Cir. 2004), where the physician, Dr. Reed, was found
deliberately indifferent when he failed to adhere to treatment
recommendations imposed by an outside physician.  The court disagreed
that his actions were "simply an exercise of medical judgement rather
than deliberate indifference," stating that the fact that he
explicitly disregarded the specialist's instructions created a genuine
issue of material fact as to the deliberate indifference, at 664.

Judge Grand referred to a much followed case, Jones v. Simek,
193 F.3d 485 (7th Cir. 1999), where the Court held that the refusal
to follow the specialist's advice, if proven, met the standard for
deliberate indifference and thus merited denial of summary judgment.
See also Perez v. Fenoglio 792 F.3d 768 (7th Cir. 2015)(Plaintiff
stated a claim for deliberate indifference where he alleged that
a prison doctor ignored the treatment recommendations of outside
specialists).

Judge Grand summarized that while a mere difference between
one physician and another might not necessarily constitute deliberate
indifference, ignoring a specialist's directives raises a material
question of fact and must go to trial.  Fortescue clearly ignored
the specialist, clearly knew the serious risks to Blau, and violated
a bright red line in both the medical and legal professions.

DOES NOT APPLY

[NOTE: the Rhinehart v. Scutt, supra, standard was subsequently

modified by the Sixth Circuit in Case No. 17-2166 to include a requirement that, where <u>doctors</u> disagreed, the Plaintiff must show medical evidence of further harm due to the lack of treatment.  That standard does not apply to this case because Fortescue is not a doctor: it was not a difference of medical opinion between doctors, or peer medical experts.  But even if this Court grants Fortescue this unwarranted promotion, Blau has proven with verifiable medical evidence that he endured months of further suffering, a second heart surgery, and three life-threatening strokes.  With the proper low fat diet, as this Court's chosen nutrition expert Dr. Alaimo verified, medical evidence proves this disease could be checked and reversed. [See Dr. Alaimo Nutritional Analysis Report, Page 2, Notes 1, 2, & 3; Attached Exhibit D.]

Finally, Defendants cite <u>Clark v. Gardner</u>, No. 89-5466, 1990 U.S. App. LEXIS 2014 (6th Cir. Feb. 9, 1990) claiming that "disatisfaction with the level of his low cholesterol diet not sufficient to support an eighth amendment violation" (Doc#16, Pg ID 238.  This is absolutely incorrect and the only relation it has to this case is the mention of a low cholesterol diet.  There was no specialist order, and the case was dismissed because, unlike this case, that plaintiff had no evidence to substantiate his claims.

### THE BOTTOM LINE

Fortescue knew that the law required her to follow specialists' orders.  Fortescue knew that to deny Blau's therapeutic diet was to place him at risk for further heart damage.  And Fortescue's denial not only placed Blau at high risk, he suffered tremendously because of it.

---
## DEFENDANT HEIDI WASHINGTON, MDOC DIRECTOR
---

Defendants argue that Blau has not satisfied the exhaustion requirement with respect to Director Washington because Blau did not name her by name in his grievance.

The only grievance relevant to this case is GRIEVANCE #JCF 1608 1605 12h1; Doc#11-4, Pg ID 8285 (Attached as Exhibit C). Respondents addressed this grievance on its merits at all three steps. Additionally, Blau opened the grievance by stating:

> "This grievance is against Angela Fortescue, R.D., Corizon, MDOC, and all medical personnel responsible for denying the cardiologist prescribed therapeutic diet."

In addition to the fact that Blau listed MDOC, of which Washington is the director, Blau used language clearly intended to include all parties involved in the denial. The law is clearly established in the Sixth Circuit that when prison officials decline to enforce their own procedural requirements and opt to consider otherwise defaulted claims on the merits, so will the courts (Reed-Bey v. Pramstaller, 603 F.3d 322 (6th Cir. 2010) HN3. Additionally, Blau concluded the grievance by stating:

> "Let all deficiencies be identified to meet exhaustion under 42 USC 1997e"

### DIRECT INVOLVEMENT

Defendants seek to distinguish this case from Reed-Bey by claiming that Washington was not personally involved, thus no respondeat superior can apply. Washington, however, did get personally involved after Blau pled with her to help him, via an

email from his wife (Doc#13, Pg ID 191), to which Washington responded:

> "I have followed up on your concerns related to your husband's dietary needs. I have consulted with Chief Medical Officer, Health Unit Manager, and a second Dietician. All are in agreement that the nutritional assessment and plan that were completed by the MDOC Dietician are appropriate."

Director Washington knew of Blau's surgery, of his atherscclerosis, and the obvious risks to his health of eating a high fat diet. The MDOC main line diet is high in fat, high in cholesterol, with no low fat substitutes for many of the dishes such as pizza, grilled cheese, and mac & cheese. (See Doc #14, Pg ID 366-402; see Plaintiff's Declaration, Attached Exhibit B). Washington chose to disregard these specialists' orders and to support Fortescue's denial.

There is a question of material fact for a jury to decide whether:

(#1) Defendant Washington's consultation with three medical staffers about Blau's therapeutic diet and then responding to Blau's request with a personal denial constitutes "personal involvement":

(#2) Defendant Washinton's personal denial of Blau's therapeutic diet, in contradiction to several cardiologist/specialists' orders, constitutes deliberate indifference to Blau's serious medical needs.

MDOC DIRECTOR IS LIABLE FOR MDOC POLICIES

In his grievance, Blau listed MDOC, to include its policies

SUPPLEMENTAL BRIEF, PAGE 8

which cannot be grieved directly per PD 03.02.130(F)(1) which states:
"A grievant may not grieve the <u>content</u> of a policy or procedure except
as it was specifically applied to the grievant" (meaning whether
or not it was correctly applied to grievant).  Had Blau cited the
lack of policy as a reason for the denial, the grievance would have
been rejected and exhaustion incomplete. The question, as the <u>Reed-Bey</u>
court pointed out, is whether Defendants were given a "fair
opportunity" to address the grievance on the merits (HN2), and, in
giving this "fair notice," Plaintiff/grievant should not need a law
degree to navigate the process where "prison administrators thwart
inmates from taking advantage of a grievance process through
machination, misrepresentation, or intimidation." <u>Ross v. Blake</u>,
136 S.Ct. 1850 (2016).

    As the Eastern District's Honorable Judge Laurie J. Michelson
ruled in <u>Johannes v. Washington</u>, 2016 U.S. Dist. LEXIS 43165, an
issue with policy implicates the MDOC Director, who, in this case
as in that, is Heidi Washington.  <u>Blau has raised a question of</u>
<u>material fact for a jury to decide whether this grievance gave</u>
<u>Defendant Washington fair opportunity to investigate, analyze, and</u>
<u>address all the causes and reasons for the denial of a life-saving</u>
<u>diet.</u>

    MDOC <u>does</u> have low fat and low sodium diets (See attached Exhibit
E)--and this whole lawsuit would have been avoided had Defendants
simply put Plaintiff on the diet when the specialists ordered it.
It would not have required a transfer, or any hardship, because
Plaintiff was already at a facility (JCF) equipped for this diet
and providing it to other prisoners.
SUPPLEMENTAL BRIEF, PAGE 9

MDOC policy, however, does <u>not</u> provide for this diet to be administered to heart patients.  In fact, it does not have <u>any</u> diet for coronary artery disease (CAD) patients, all of whom need a low fat, low cholesterol diet to preserve their lives and ease their suffering.  The MDOC Diet Manual, page 155 (Attached Exhibit E), "Hyperlipidemia Diets," discusses a low fat, low cholesterol diet for heart patients:

> "Hyperlipidemia appears to be a significant risk factor for the development of coronary heart disease.  Serum lipid levels may be lowered by decreasing the intake of total fat, saturated fat, cholesterol, and by achieving desirable body weight.  Prisoners with established vascular disease...may be referred to the dietician for **counseling** on self-selecting a low fat/low cholesterol diet from the regular meal line.  **A hyperlipidemia diet is not available as a therapeutic diet tray.**" (See attached Exhibit D)

CAD is so common and serious that it's the #1 killer of Americans, and every layperson knows that you must eat a low fat and low cholesterol diet when you have CAD, <u>Blackmore v. Kalamazoo County</u>, 390 F.3d 890 (6th Cir. 2004) (Claim is stated where "the need for medical care was so obvious that even a layperson would easily recognize the necessity for a doctor's attention").  But despite thousands of heart patients currently dying within the MDOC, <u>no policy exists</u> to provide them with a low fat, low cholesterol diet. Defendant Washington is directly liable for this policy of deliberate indifference.

SUPPLEMENTAL BRIEF, PAGE 10

A jury must decide this relevant question of material fact, that this <u>serious deficiency in policy directly affected denial of Blau's diet,</u> evidenced in Fortescue's statement "you do not meet the criteria for a therapeutic diet." (Doc #13, Pg ID 197). That is because <u>there is no therapeutic diet criteria for CAD patients,</u> so despite months of debilitating pain and near inability to stand or walk, two heart surgeries, and three strokes, there is no policy provision that a CAD and cerebrovascular patient receive a therapeutic diet.

**RELIEF REQUESTED**

WHEREFORE, Plaintiff Blau prays this Honorable Court will DENY Defendants' motion for summary judgment and GRANT Plaintiff's Motion for Appointment of Counsel.


Respecfully submitted,



Date: 4-28-19

James Blau


I mailed a copy of this Brief in Opposition to Summary Judgment to Defendant's attorney at the address on page one of this brief, by placing it in the US Mailbox in C Unit, on April 29 , 2019.


James Blau


SUPPLEMENTAL BRIEF, PAGE 12

**EXHIBIT A**

**CARDIOLOGIST ORDERS FOR LOW FAT, LOW CHOLESTEROL DIET**

BLAU, JA.      E.                                    Opt Out:  No
Allegiance Health - 6N
**PTDCinst**
From:  06/19/2016 14:15          To:  07/19/2016 14:15
Rm-Bed:  605 - 0          Admit Dt:  07/16/2016 03:05
Age:  47 yr     Gender:  M    MD:  Rashid Danial Md, 1348 , MD
DOB: 04/13/1969     Acct: 12441546
MRN:  769972
Requested:  07/19/2016 14:15 (MS)                    Page 1 of 4

**Patient Discharge Instructions for: JAMES E. BLAU**

**Allergies:** carbamazepine

**Most Recent
Vital Signs:**

**Discharge Order Set** Unstable Angina, NSTEMI (Non-ST elevation MI), STEMI (ST-elevation MI).

**DISCHARGE TO:** other: Prison.

**DISCHARGE DIET** Sodium 2000 mg, no caffeine, low cholesterol, low fat.

**DISCHARGE Requirement** ACE Inhibitor (ACE-I) ordered.

Angiotensin II Receptor Blocker (ARB) contraindicated Taking/prescribed ACE Inhibitor (ACE-I),.

Aspirin ordered.

Beta-blocker ordered.

Statin ordered.

# MICHIGAN DOC AUTHORIZATION LETTER

| Service Authorized: | Outpatient Procedure - Cardiovascular | | |
|---|---|---|---|
| Effective Date: | 5/8/2017 | | |
| Responsible Facility: | G ROBERT COTTON CORRECTIONAL FACILITY | Visits Authorized: | 1 |
| Tracking Number: | 00626307 | | |
| Provider: | UNKNOWN PROVIDER | | |

**Note to Provider of Services:**

- This health plan is administered by Blue Cross Blue Shield of Michigan. While coverage remains in force, members are entitled to benefits under the applicable plan, subject to exclusions and limitations.
- Participating doctors and hospitals are independent providers and are neither agents nor employees.
- Please see the patient identification information at the bottom right of this form for claim information.


**Blue Cross Blue Shield of Michigan**

A nonprofit corporation and independent licensee of Blue Cross and Blue Shield Association.

**Provider Services: 1-800-676-2583**

Company Name:

Corizon
Michigan Department of Corrections

Group Number:

71499

---

The consulting physician should complete this section. The completed form will be sealed in the attached envelope and returned with an officer to the correction facility.

### Clinical Summary or Attached Report

*Pt must follow low cholesterol, low fat diet - vegan diet*

☐ Follow-up visit needed (including time frame)

**\*\*\* For security and safety, please do not inform patient of possible follow-up appointments. \*\*\***

| Signature of Consulting Physician | Date | Time |
|---|---|---|
| *(illegible) (Preisbield)* | 5/16/17 | 08:00 |

| Site Medical Provider | Reviewed By: Date | Time |
|---|---|---|
| *(signature)* | 5/16/17 | 1444 |

---

## Corizon: REFERRAL LETTER

| Patient Identification | |
|---|---|
| Name: | BLAU, JAMES |
| Inmate Number: | 214995 |
| D.O.B. | 04/13/1969 |

MR# 769972 HP O          5/15/17
BLAU, JAMES EDWARD          AD:N OF:N
M  4/13/69  048Y ACT#12883476

 

**MICHIGAN HEART**
SAINT JOSEPH MERCY HEALTH SYSTEM

**IHA**

April 17, 2018

Blau, James  (04/13/1969) Visit Date: 04/17/2018 01:00 PM

Today's Provider: Cathy  Glick MD,
Location: Michigan Heart Jackson

## History of Present Illness

Thank you for asking me to see Mr. Blau in cardiology consultation on April 17, 2018.  He is a 49-year-old white male, prisoner, who we first met in the summer 2016 when he presented with angina, in a positive Myoview stress test.  Heart catheterization showed high-grade RCA disease and that was stented.  About 12 months later he had recurrent symptoms and a repeat heart catheter showed restenosis of the RCA lesion that was restented.  He's been on aspirin and Plavix uninterrupted since then.  He is also on Zocor and Coreg.

He has been very unhappy with the kind of food that's available to him and he is not able to follow a low-fat and low-cholesterol diet.

He's had some recurrence of symptoms, with some pain on the right side of his chest which has lasted for hours and is not easily relieved with him.  There has been associated fatigue and nausea.  He has been short of breath.  He's also had left-sided numbness that lasted for 2 days and has had some visual disturbance.  His EKG today is normal apart from being in a sinus bradycardia.  His last LDL cholesterol was normal one year ago.

## Assessment

Mr. Blau has had CAD with stenting to the RCA in July 2016 and May 2017.  He's had recurrence of somewhat atypical symptoms.  He has also had some neurological symptoms that require evaluation.  I do not know his recent cholesterol level.  He is on a reasonable combination of medications.  He is unsuccessful in requesting a healthy low-fat low-cholesterol diet at the prison.

## Plan

He will need to follow a low-fat and low-cholesterol diet, predominantly fruits and vegetables and lean unbattered protein.

If he has chest pain that does not relieve with 3 nitroglycerin 5 minutes apart, he needs to be sent to the emergency department.

I have ordered an adenosine Cardiolite stress test.  If that is abnormal, showing recurrent ischemia, then I will set up cardiac catheterization with possible redo angioplasty.  The patient is aware of the cardiac catheterization procedure including the indications, benefits, risks and complications and agrees to proceed in this fashion.

If he has a heart catheter and does not require further intervention, then I think he will need GI evaluation for these symptoms.

Additionally, because of these neurological symptoms, I agree with carotid ultrasound that has been ordered, and I think he will need a full neurological consultation.

We will look for the results of his most recent lipid profile.

Blau, James    000001378721 04/13/1969 04/17/2018 01:00 PM Page: 1/3

**EXHIBIT B**

**PROPER DECLARATION OF PLAINTIFF JAMES BLAU**

## DECLARATION OF JAMES BLAU

1. On June 5, 2016, after months of severe unstable angina, Plaintiff I had a consultation with cardiologist Dr. Cathy Glick. Dr. Glick ordered a heart catheterization and a low fat, low cholesterol, low sodium diet for me.

2. On June 15, 2016, I suffered a severe myocardial event and underwent an emergency heart surgery where a 90% blockage was discovered in my right coronary artery. Cardiovascular Surgeon Jonovich diagnosed athersclerosis (coronary artery disease), placed a stent in the blockage, and ordered a low fat, low cholesterol 2000mg sodium diet, supported and seconded by Michigan Heart Team Doctor Rashid on my discharge orders. (Doc#13, Pg ID 193).

3. Upon returning to the JCF prison, I requested this specialist-ordered diet.

4. JCF Dietician Angela Fortescue reviewed my medical file and, based on her expertise, denied me this diet (Doc#13, Pg ID 197).

5. Fortescue's denial forced me to continue eating the high fat, high cholesterol main line diet or suffer from lack of nutrition. (See Doc #14, Pg ID 366-402.)

6. The MDOC main line diet is extremely high in fat, transfat, and cholesterol, as I accurately and truly analyzed from the MDOC's "DETAILED MENU CYCLE NUTRITIONAL ANALYSIS" which I obtained via a third party Freedom Of Information Act request to MDOC headquarters in Lansing. (See Doc#24, Pg ID 366-402.)

7. Additionally, all the MDOC charts grossly overestimate the amount of safe food I can eat because unreported is the fact that ALL RICE, NOODLES, VEGETABLES, POTATOES, BAKED ITEMS, and VEGGIE/BEAN BURGERS are cooked in transfat margarine and/or vegetable oil and/or transfat margarine which the FDA itself has outlawed a a cause agent of heart disease (See Pg ID 218-220).

8. By October 2016, I again suffered daily from unstable angina, which caused severe chest pain, headaches, jaw & neck pain, shortness of breath, shoulder pain, dizziness, nausea and syncope (passing out when standing up too quickly). (Pg. ID 209-213)

9. After nine months of daily pain and suffering, in July 2017,

APRIL 30, 2019; DECLARATION, PAGE 1

I underwent another heart surgery and a stent was placed in a 80% blockage in my "widowmaker" artery. Operating surgeon, Doctor Elizabeth Pielsticker, ordered a "vegan, low fat, low cholesterol, 2000mg" diet. (See enclosed Exhibit A)

10. In February and March 2018, I suffered three strokes (transient ischemic attack, or TIA), during which I lost feeling, strength, and mobility on my left side for more than two days and temporarily lost vision for several hours. (See Exhibits for Motion to Supplement Reply (Doc#58)). In March 2019, I suffered two more TIAs.

11. A subsequent MRI determined that brain hemorrhage was not the cause, meaning that these strokes were caused by clot particles breaking off from my heart blockages and getting caught in my brain, an occurence which means the chances of recurrence and serious permanent damage have increased dramatically.

12. In April 2018, cardiologist Dr. Cathy Glick examined me and diagnosed the strokes, referring me to a neurologist and again ordering the low fat, low cholesterol diet, which should consist "predominantly of fruits and vegetables and lean unbattered protein." (Exhibit A)

13. During this period described above, I self-regulated my diet and dropped 33 pounds, from 218 to 185 pounds. (See Exhibits for Motion to Supplement Reply (Doc#58))


I swear under penalty of perjury that the foregoing statements are true and correct, based on my personal observation, and that if called I am willing and competent to testify to them.

Further, I swear under penalty of perjury, that the statements made in my verified complaint [Doc#1] and Affidavit of Plaintiff James Blau [Doc#24, Pg ID 363-364] are true and correct and completely based 100% on personal observation. I know them to be facts. I am competent and wiling to testify to them.

James Blau

4-28-19
April 30, 2019

APRIL 30, 2019; DECLARATION, PAGE 2

## EXHIBIT C

**GRIEVANCE #JCF 1608 1605 12h1**

**FULLY EXHAUSTED AT ALL THREE STEPS**

MICHIGAN DEPARTMENT OF CORRECTIONS

4835-4247- 10/94

**PRISONER/PAROLEE GRIEVANCE FORM**

CSJ-247A

Date Received at Step I  8/12/16     Grievance Identifier: JCF 16 08T 1605 12h11

Be brief and concise in describing your grievance issue. If you have any questions concerning the grievance procedures refer to PD 03.02.130 and OP 03.02.130 available in the prisoner's Law Library.

| Name (print first, last) | Number | Institution | Lock Number | Date of Incident | Today's Date |
|---|---|---|---|---|---|
| JAMES BLAU | 214995 | JCF | E-44 | 8/8/16 | 8/9/16 |

What attempt did you make to resolve this issue prior to writing this grievance? On what date? 8/4 Via kits
If none, explain why.

This grievance is against Angela Fortescue, R.D., Corizon, MDOC, and all medical personnel responsible for denying the cardiologist prescribed therapeutic diet.

State problem clearly. Use separate grievance form for each issue. Additional pages, using plain paper, may be used. Four copies of each page and supporting documents must be submitted with this form. The grievance must be submitted to the Grievance Coordinator in accordance with the time limits of OP 03.02.130.

DELIBERATE INDIFFERENCE TO SERIOUS MEDICAL NEEDS: ANGELA FORTESCUE, R.D. DENIED A MEDICALLY ORDERED THERAPEUTIC DIET PRESCRIBED TO TREAT MY CORONARY ARTERY DISEASE. I have been diagnosed with Cardiovascular Artery Disease (CAD) and recently had an angioplasty which discovered a 90% blockage in my coronary artery (which they stented), and two other significant blockages noted but not stented. Cardiac specialists from the Michigan Heart Group at Allegiance Health ORDERED a low sodium/low fat diet with several medications. On 8/8/16, I was notified that the MDOC/JCF Dietician ANGELA FORTESCUE, R.D., OVERRULED these cardiologists and DENIED this therapeutic diet. This diet is an extremely necessary component of a life-saving treatment regimen meant to prevent further heart damage and reverse existing damage/blockages. Let any deficiencies in this grievance be identified to meet exhaustion under 42 USC 1997e.

_____

Grievant's Signature

---

RESPONSE (Grievant Interviewed? ☑Yes ☐No     If No, give explanation. If resolved, explain resolution.)

_____        _____

Respondent's Signature  Date     Reviewer's Signature  Date

_____        _____

Respondent's Name (Print)  Working Title     Reviewer's Name (Print)  Working Title

| Date Returned to Grievant: 8/31/16 | If resolved at Step I, Grievant sign here. Resolution must be described above. | Grievant's Signature | Date |

DISTRIBUTION: White, Green, Canary, Pink — Process to Step One; Goldenrod — Grievant

# Step II Grievance Appeal Response

| | |
|---|---|
| Grievance Number: JCF 2016 08 1605 12H1 | |
| Prisoner Name: Blau, James | |
| Prisoner Number: 214995 | |

I have reviewed your Step I Grievance, the Step I Response, and your Step II Reason for Appeal.

**SUMMARY OF STEP I COMPLAINT:** Grievant alleging that he was ordered by an offsite Medical Provider (MP) to have a low sodium/low cholesterol diet and is being denied a therapeutic diet. Date of incident 8/8/16.

**SUMMARY OF STEP I RESPONSE:** Electronic Health Record (EHR) reviewed. Prisoner accounts consulted. Grievant interviewed. Grievance form reviewed. Grievance reviewed. According to the EHR, Mr. Blau 214995 on 8/4/16 Dietary did a chart review at this time she indicates that Grievant does not require a therapeutic diet and to reinforce healthy choices off the regular meal line. Also checked his store orders from the last 2 months included items such as refried beans, spicy chili with beans, honey roasted peanuts, flour tortillas, bagels, popcorn, and crunchy peanut butter that are all high in sodium. Grievance is denied. Grievant is encouraged to access health care through the kite process to address any current health care concerns. Date of response 8/25/16.

**SUMMARY OF STEP II REASON FOR APPEAL:** Grievant indicates all issues, claims, parties carry over to Step II. Mailed from E unit kite box on 9/8/16. Date of incident 8/8/16.

**SUMMARY OF STEP II INVESTIGATION;** Upon investigation of the Electronic Health Record (EHR), Cardiac Catheter placed on 7/18/16. Grievant returned to MDOC on 7/19/16. MP appointment was on 7/24/16, MP reviewed discharge paper work and added Nitro and Plavix to Grievant's regimen per discharge orders. The MP ordered a one (1) month follow up. Grievant's cardiac medications being prescribed include; Aspirin, Zocor (statin drug), Plavix (Clopidogrel), Nitro, Atenolol and Imdur per MP order. The MP one (1) month follow up visit took place on 8/24/16, the patient reports feeling much better since stent placement. The next follow up will be in February of 2017. Grievant was encouraged to continue current medication, the MP also reviewed how to take Nitro with Mr. Blau.

Diet recommendations upon discharge on 7/19/16 were; *Sodium 2000 mg, no caffeine, low cholesterol, low fat.* The Registered Dietician (RD) did a chart review on 8/4/16 and notes; *I have reviewed your medical record, you do not meet the criteria for a therapeutic diet. I have attached information on healthy choices on the regular meal line. Also, avoid store foods to keep sodium intake to a minimum. Pt does not require a therapeutic diet at this time. Reinforce healthy choices off the regular meal line, will send healthy choices diet info.*

Grievant's store list has also been reviewed and it is noted that he is purchasing coffee and tea, he was instructed no caffeine. He is also purchasing products high in sodium (flour tortillas, natural MW popcorn, pickles, hot corn chips, BBQ chips to name a few). As indicated in the Step I Grievance response; the regular meal line has 3-4 grams of sodium which is considered a sodium controlled diet. All food served on the regular diet is low fat, low cholesterol.

Grievant is encouraged to access health care through the kite process to address any current health care concerns and to constructively discuss his concerns with Health Care Staff at scheduled appointments.

**CONCLUSION: Evidence**
- PD 03.04.100 Health Care Services
- PD 03.02.130 Prisoner/Parolee Grievances
- PD 04.07.101, Therapeutic Diet Services

**Grievance Denied:** RD reviewed EHR and discharge paperwork. Grievant does not require a therapeutic diet at this time. Reinforce healthy choices off the regular meal line, was send healthy choices diet information. Allegiance usually uses the term "Cardiac diet" which our regular diet is; low fat, low cholesterol, no added salt. Documentation reflects MP determined medication treatment plan accordingly, after reviewing discharge paper work.

| | |
|---|---|
| RESPONDENT NAME: Subrina Aiken, RN | TITLE: Clinical Administrative Assistant<br>Jackson Health Care Office Administration |
| RESPONDENT SIGNATURE: *Subrina Aiken, RN* | DATE: 9/14/16 |

4835-4248 5/09
CSJ-247B

MICHIGAN DEPARTMENT OF CORRECTIONS
**PRISONER/PAROLEE GRIEVANCE APPEAL FORM**

Date Received by Grievance Coordinator     Grievance Identifier: | G F | 1 6 0 8 | 1 6 0 5 | 2 4 1 |
at Step II: _Ov/12/16_

**INSTRUCTIONS:** THIS FORM IS ONLY TO BE USED TO APPEAL A STEP I GRIEVANCE.
The white copy of the Prisoner/Parolee Grievance Form CSJ-247A (or the goldenrod copy if you have not been provided with a Step I response in a timely manner) **MUST** be attached to the white copy of this form if you appeal it at both Step II and Step III.

RECEIVED MDOC
SEP 22 2016
Office of Legal Affairs

If you should decide to appeal the Step I grievance response to Step II, your appeal should be directed to:
___McCumber-Hemry___ by ___9/15/16___ . If it is not submitted by this date, it will be considered terminated.

If you should decide to appeal the response you receive at Step II, you should send your Step III Appeal to the Director's Office, P.O. Box 30003, Lansing, Michigan, 48909.

| Name (Print first, last) | Number | Institution | Lock Number | Date of Incident | Today's Date |
|---|---|---|---|---|---|
| JAMES BLAU | 214995 | JCF | E-44 | 8-8-16 | 9-8-16 |

**STEP II — Reason for Appeal**

All issues, claims, parties carry over to Step II.

Mailed from E-unit kite box on 9-8-16. JB

| **STEP II — Response** | Date Received by Step II Respondent: |
|---|---|

(See Attached)

S. Aiken, RN 3     S. Aiken RN     9-14-16
Respondent's Name (Print)     Respondent's Signature     Date

Date Returned to Grievant: 9/15/16

**STEP III — Reason for Appeal**

    ALL ISSUES AND PARTIES FROM STEP I CARRIET TO STEP III.

    MAILET FROM JCF E UNIT MAIL BOX ON 9/15/16

**NOTE: Only a copy of this appeal and the response will be returned to you.**

**STEP III** — Director's Response is attached as a separate sheet.

DISTRIBUTION: White – Process to Step III; Green, Canary, Pink – Process to Step II; Goldenrod – Grievant

### Step III Grievance Response

**JAMES BLAU**                214995

**JCF**      16081605

Grievant alleges he is inappropriately being denied access to a low sodium therapeutic diet.

All relevant information within the electronic medical record has been reviewed. Step I and Step II appropriately addressed this grievance and are affirmed at the Step III appeal. The Medical Provider is the medical authority and is responsible to manage the treatment plan of the patient, (to include medical details, therapeutic diets, etc.) Disagreement with the treatment plan does not constitute a denial of care.

Grievance appeal denied.

Response of Bureau of Health Care Services                Date:      11/1/2016

Approved: _R. Harbaugh RN2_____        Date: _11/10/16_
                    R. Harbaugh, RN

_R.D.Russell_____                                        NOV 1 4 2016
Richard D. Russell  Manager, Grievance Section Office of Legal Affairs        Date Mailed

Ref. #        25472

C:        Warden

        Regional Health Care Administrator        Southern

        Grievant

++++++++++++++++++++++++++++++

**REQUEST FOR JUDICIAL NOTICE**

++++++++++++++++++++++++++++++

**<u>EXHIBIT D</u>**

**PAGE 2 OF DR. ALAIMO'S NUTRITIONAL ANALYSIS OF BLAU'S DIET**

**AS ORDERED BY JUDGE TARNOW**

**THREE FOOTNOTES DESCRIBING MEDICAL EVIDENCE SHOWING RELATIONSHIP**

**BETWEEN LOW FAT DIET AND CAD REVERSAL**

- Institute of Medicine (US) Committee on Examination of Front-of-Package Nutrition Rating Systems and Symbols; Editors: Ellen A. Wartella, Alice H. Lichtenstein, and Caitlin S. Boon. Appendix BFDA Regulatory Requirements for Nutrient Content Claims, Washington (DC): National Academies Press (US); 2010.
- Ornish, et al. Intensive Lifestyle Changes for Reversal of Coronary Heart Disease. *JAMA.* 1998;280:2001-2007

**Facts of the Case:**

After diagnosis with coronary artery disease, Mr. Blau received discharge instructions from medical professionals for his diet. I have been provided with menus, recipes and nutritional analysis of the foods that Mr. Blau is offered in the prison. In addition, I have received his store orders and photographs of the foods he purchased that include ingredients and nutrition facts labels.

***Definitions:***
Low fat
In 1993, the Food and Drug Administration and US Department of Agriculture published final rules defining nutrient content claims including a definition of "low fat". For meals and main dishes, Low fat is defined as "3 g or less per 100 g and not more than 30% of calories from fat". (Institute of Medicine (US) Committee on Examination of Front-of-Package Nutrition Rating Systems and Symbols; Editors: Ellen A. Wartella, Alice H. Lichtenstein, and Caitlin S. Boon. **Appendix BFDA Regulatory Requirements for Nutrient Content Claims,** Washington (DC): National Academies Press (US); 2010; https://www.ncbi.nlm.nih.gov/books/NBK209851/).

However, less than 30% of kilocalories is not the only definition of low fat. For example, three studies have used lower % fat diets to reverse heart disease:
1) in the randomized controlled Lifestyle Heart Trial conducted by Ornish, et al., lifestyle changes for five years consisting of a diet of 10% of kilocalories from fat, aerobic exercise, stress management training, smoking cessation and group psychosocial support led to a regression of coronary atherosclerosis as measured by arterial stenosis whereas the control group increased arterial stenosis (Ornish, et al. Intensive Lifestyle Changes for Reversal of Coronary Heart Disease. *JAMA.* 1998;280:2001-2007; https://www.ncbi.nlm.nih.gov/pubmed/9863851);
2) a study conducted by Esselstyn et al. in which patients were asked to adhere to a diet that derived less than 10% of its kilocalories from fat and take lipid lowering drugs found that arterial stenosis decreased on average by 7% in the patients followed for 5.5 years (Esselstyn CB, et al. A strategy to arrest and reverse coronary artery disease: a 5-year longitudinal study of a single physician's practice. J Fam Pract. 1995 Dec;41(6):560-8. https://www.ncbi.nlm.nih.gov/pubmed/7500065);
3) a study conducted Roberts et al. placed obese men on a high-fiber, 12-15% fat diet with daily aerobic exercise in a 3-wk residential program and found significant reductions in body mass index, all serum lipids and lipid ratios, as well as blood markers for cardiac inflammation (Roberts CK, et al. Effect of a short-term diet and exercise intervention on oxidative stress, inflammation, MMP-9, and monocyte chemotactic activity in men with

**<u>EXHIBIT E</u>**

**EXCERPTS FROM MDOC DIET MANUAL SHOWING THAT**

**LOW FAT AND LOW FAT/LOW CHOLESTEROL DIETS**

**NOT AVAILABLE TO CAD PATIENTS**



Contract 071B4300009

## HYPERLIPIDEMIA DIETS (HLP DIETS)

Hyperlipidemia appears to be a significant risk factor for the development of coronary heart disease.  Serum lipid levels may be lowered by decreasing the intake of total fat, saturated fat, cholesterol, and by achieving desirable body weight.

Prisoners with established vascular disease, significant risk factors for atherosclerosis, and/or serum cholesterol or lipoproteins outside the desirable range may be referred to the dietitian for counseling on self-selecting a low fat/low cholesterol diet from the regular meal line.  **A hyperlipidemia diet is not available as a therapeutic diet tray.**  The prisoner will be advised to self-select from the regular menu using the Standardized Healthy Choice Dietary Options, which are available at all MDOC facilities. The statewide regular menu will provide no more than 30% of total calories as fat and saturated fat will not exceed 10% of total calories.  By using the "Standardized Healthy Choice Options" and occasionally the vegetarian choices, the prisoner will be able to select a diet which is even lower in total and saturated fat. The prisoner will be instructed and provided with educational materials on:

- o   weight control
- o   selecting lower fat foods
- o   selecting healthy choices from the prisoner store
- o   restricting refined sugars
- o   changing risk factors such as smoking and inactivity

| TYPE OF FOOD | CHOOSE | LIMIT | AVOID |
|---|---|---|---|
| **MILK GROUP**<br><br>2 servings<br>daily | Skim milk, cottage cheese | 2% milk;<br>Mozzarella cheese<br>  (no more than 1 ounce<br>  per day) | Whole milk, non-dairy creamer, cream cheese, ice cream, ice cream bars, sour cream,  milk shakes |
| **MEAT GROUP**<br><br>LIMIT<br>to 4 – 6 ounces<br>daily | Poultry without skin; lean cuts of meat, trimmed; egg whites, baked fish, tuna in water | Limit to 3 oz/ day:<br>  Polish sausage<br>  Smoked sausage<br>  Turkey hot dogs<br>  Turkey lunch meats<br>Remove skin and breading<br>  from fish and chicken<br>Chicken salad, tuna in oil (drain well); hamburger, pork chops, Salisbury steak,  peanut butter (limit to 2 Tbsp/ day) | Spam, corn beef, bacon, egg yolks (limit to 3  per week); canned roast beef |

6.5

Below (in black print) is page 6.2 from the MDOC Diet Manual, which lists the medical criteria for ordering a Low Fat Diet. Keep in mind that all medical cases are not the same, this criteria on page 6.2 is to be used as a guideline. The RD evaluates each individual to determine if he/she meets the medical criteria to receive a Low Fat therapeutic diet. In other words, just because the prisoner is diagnosed with gallbladder disease, does not automatically qualify him/her for a therapeutic Low Fat diet. Every prison chow hall offers the Healthy Choice options which allow them to self-select many "restrictive" diets from the regular meal line (see page 2.5 of the MDOC Diet Manual for further explanation), including those prisoners who choose to limit the fat in their diet. For those prisoners on "meals-in", they can complete a written request to receive the Healthy Options on their delivered food tray.

## LOW FAT DIET

**PURPOSE:** A low fat diet may be indicated in the treatment of gallbladder disease or malabsorption syndromes. Fat restriction may help to reduce symptoms related to fat ingestion.

**INDICATED USES:**

> In Chronic Pancreatitis – a low fat diet may be used in conjunction with enzyme replacement in controlling pancreatic steatorrhea.

> In Fat Malabsorption – fat malabsorption may occur as a complication of intestinal bypass surgery, short bowel syndrome, cirrhosis or gastrectomy. The need for fat restriction is established by tests for fecal fat.

> In Gallbladder Disease – a low fat diet may be of benefit in the symptomatic patient with gallbladder disease. The purpose of the diet is to lessen fat-induced gallbladder contractions. There is little reason to restrict fat intake following gallbladder surgery.

**DESCRIPTION:** The low fat diet is modified to restrict dietary fat to an average of 40-60 grams per day. There is no restriction on the type of fat or dietary cholesterol. This is a moderately restricted diet which limits total fat to 15-20% of total calories. The diet restricts certain foods because of their high fat content such as fried foods and whole milk. The low fat diet does not restrict caffeine, spices, refined sugars or total calories. The diet is served in 3 meals.

**ADEQUACY:** The diet is nutritionally adequate based on the RDA/DRI except for pregnancy.

**ORDERING PROCEDURE:** This diet should be ordered as a "Low Fat Diet." It should not be ordered if a diet low in cholesterol for hyperlipidemia is desired. It may be ordered in combination with many therapeutic diets but it is not compatible with high protein diets, diets for reactive hypoglycemia or higher calorie diabetes diets.

James Blau #214995
Lakeland Correctional Facility
141 First St.
Coldwater, Mi 49036



Clerk of the Court
U.S. District Court
231 Lafayette Blvd.
Detroit, MI 48226

