UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| JAMES E. BLAU, | Case No. 16-13971 |
| Plaintiff, | SENIOR U.S. DISTRICT JUDGE |
| v. | ARTHUR J. TARNOW |
| ANGELA FORTESCUE, ET AL., | U.S. MAGISTRATE JUDGE |
| Defendants. | ELIZABETH A. STAFFORD |

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [11]**

Plaintiff, James Blau, was a prisoner at the G. Robert Cotton Correctional Facility ("JCF") of the Michigan Department of Corrections ("MDOC") when he brought this suit on November 8, 2016. He alleged that prison officials were denying him the low-fat, low-cholesterol, and low-sodium diet that was medically necessary to alleviate his cardiovascular problems. Since then, he has been transferred to a different MDOC facility and provided a vegan diet that meets his medical needs. Though this change moots his case for injunctive relief, Mr. Blau is still entitled to pursue monetary relief for Defendants' refusal to provide him with his medically necessary diet in the first place.

Defendant has filed a Motion for Summary Judgment [11] arguing that Mr. Blau did not exhaust his administrative remedies and that Defendants are entitled

to qualified immunity. That motion will be granted as to Defendants Washington and Doe but denied as to Defendant Fortescue.

## FACTUAL AND PROCEDURAL HISTORY

The underlying basis for Plaintiff's motions stems from his July 2016 heart surgery at Henry Ford Allegiance Hospital, during which doctors placed a stent in an artery with 90% blockage. (Compl. at 1). According to Plaintiff, the doctors noted that blockages in other arteries could be remedied through the use of certain medications and a low-fat / low-sodium diet. After the surgery, Dr. Danial Rashid, M.D., or a member of his staff, ordered that Plaintiff be prescribed a low-fat, low-cholesterol, 2,000 milligram sodium therapeutic diet. (Dkt. 17, Pg. ID 276). Similarly, on May 15, 2017, after Plaintiff received a second heart catheterization, a registered nurse completed discharge instructions informing Plaintiff that he should maintain "a low cholesterol low fat vegan diet per Dr. Pielsticker." (*Id.* at Pg. ID 282).

Shortly after receiving his first surgical discharge, Mr. Blau filed a kite with JCF Health Services requesting a low-sodium diet. (Dkt. 11-2, Affidavit of Angela Fortescue, May 4, 2017, ¶ 6). Upon receiving the kite, Ms. Fortescue, a Registered Dietician with the MDOC, prepared a nutritional assessment in accordance with the MDOC Policy Directive on Therapeutic Diet Services, PD 04.07.101. (*Id.* at ¶ 4). The assessment included her recommendation that Mr. Blau "did not require a

therapeutic diet." (*Id.* at ¶ 7). Instead, Ms. Fortescue recommended that staff "reinforce healthy choices off the regular meal line," and attached the Healthy Choice Options guidelines to assist Mr. Blau with making such choices. (*Id.*).

Ms. Fortescue provided two justifications for her actions in her affidavit. First, she noted that the regular meal line at all MDOC facilities provides a no added salt diet which prisoners can select. (*Id.* at ¶ 8). Second, Ms. Fortescue noted that Mr. Blau's "medical records did not evidence a medical need for the 2 g sodium diet." (*Id.* at ¶ 9). She observed that "[t[here was no order from the physician or physician assistant at MDOC requiring this — despite repeated, recent visits by this provider and health services." (*Id.*). She further noted that a 2-gram[1] sodium diet was reserved, according to the aforementioned MDOC manual, for prisoners with conditions "like congestive heart failure, liver disease, kidney failure, and refractory hypertension." (*Id.*). Ms. Fortescue also noted that Mr. Blau was in the habit of purchasing unhealthy snacks from the commissary store. (*Id.* at ¶ 10). She found that "consumption of these items would mitigate, if not entirely remove, any health benefit of the 2g diet." (*Id.*).

On August 9, 2016, Mr. Blau filed a Step I grievance pursuant to the MDOC grievance procedure. That grievance stated as follows.

---

[1] The sources refer to a low-sodium diet as 2 g, 2-grams, 2,000 milligrams, and 2,000 mg. They are all equivalent.

> DELIBERATE INDIFFERENCE TO SERIOUS MEDICAL NEEDS: ANGELA FORTESCUE R.D. DENIED A MEDICALLY ORDERED THERAPEUTIC DIET PRESCRIBED TO TREAT MY CORONARY ARTERY DISEASE. I have been diagnosed with Cardiovascular Artery Disease (CAD) and recently had an angioplasty which discovered a 90% blockage in my coronary artery (which they stented), and two other significant blockages noted but not stented. Cardiac specialists from the Michigan Heart Group at Allegiance Health ORDERED a low sodium / low fat diet with several notifications. On 8/8/16, I was notified that the MDOC/JCF Dietician ANGELA FORTESCUE, R.D. OVERRULED these cardiologists and DENIED this therapeutic diet.

(Dkt. 11-4, Pg. ID 85).

Mr. Blau was interviewed about his grievance, and MDOC's Summary of the Step I Response read as follows.

> According to the [Electronic Health Record], Mr. Blau 214995 on 8/4/16 Dietary did a chart review at this time she indicates that Grievant does not require a therapeutic diet and to reinforce healthy choices off the regular meal line. Also checked his store orders from the last 2 months included items such as refried beans, spicy chili with beans, honey roasted peanuts, flour tortillas, bagels, popcorn, and crunchy peanut butter that are all high in sodium. Grievance is denied.

(*Id.* Pg. ID 84).

Mr. Blau filed a Step II appeal on September 12, 2016. The Summary of the Step II Response alluded to Mr. Blau's cardiac condition and noted that Diet recommendations upon discharge on 7/19/16 were: "Sodium 2000 mg, no caffeine, low cholesterol, low fat." The Summary continued,

> Grievant's store list has also been reviewed and it is noted that he is purchasing coffee and tea, he was instructed no caffeine. He is also purchasing products high in sodium (flour tortillas, natural MW popcorn, pickles, hot corn chips, BBQ chips to name a few). As Indicated in the Step

> I Grievance response, the regular meal line has 3-4 grams of sodium which is considered a sodium controlled diet. All food served on the regular diet is low fat, low cholesterol.

(*Id.*).

Mr. Blau appealed this response, and his Step III Grievance appeal was denied by the Bureau of Health Care Services on November 1, 2016. (*Id.* Pg. ID 82).

On November 8, 2016, Mr. Blau filed his Complaint in federal court. [Dkt. # 1]. He filed a Motion for an Order to Show Cause [3] on January 17, 2017 and a letter to the Court on February 23, 2017. On May 5, 2017, Defendants filed a Motion for Summary Judgment [11].

On July 5, 2017, Plaintiff filed a Motion for a Preliminary Injunction [17]. The Court held a status conference on August 3, 2017 and directed the parties to reach a settlement. On November 7, 2017 the Court issued an Order [30] directing the parties to respond to the Court's proposed solution. That solution called for Plaintiff to be prescribed the MDOC's religious vegan menu, which provides "a low fat, low cholesterol, 2000 milligram sodium therapeutic diet," as per Plaintiff's medical orders. (Dkt. 30). In response, Plaintiff rejected the MDOC religious vegan diet as insufficiently healthy (Dkt. # 33). In light of Plaintiff's refusal to settle, Defendants, in addition to contesting the medical necessity of the diet, requested the Court to rule on its motion for summary judgment. (Dkt. # 31).

On December 12, 2017, the Court ordered that Mr. Blau be provided with "food options that afford Plaintiff sufficient calories and that meet Plaintiff's specific

nutritional needs." (Dkt. 34). "Plaintiff should receive a vegan diet containing items that are low in fat and cholesterol, and that together, account for less than 2,000 milligrams of sodium per day." (*Id.*). This closed the case.

Both parties filed Motions for Reconsideration [36, 37], and on February 22, 2019, the Court denied both motions. Both parties then appealed, and, on August 22, 2018, the United States Court of Appeals for the Sixth Circuit vacated the Court's December 12, 2017 Order and remanded the case to consider the arguments raised in Defendants' Motion for Summary Judgment. (Dkt. 50).

On September 4, 2018, Mr. Blau filed a Notice [51] that he had been transferred to Lakeland Correctional Facility ("LCF"). By the end of September of 2018, according to both parties, Mr. Blau was receiving a low-fat, low-sodium vegan diet. Plaintiff filed a Motion for Show Cause [55] asking for a healthier diet, and, in response, the parties agreed to commission an independent expert to review the health effects of MDOC's religious vegan diet. On December 11, 2018, the Court issued an Order [61] authorizing the employment of Dr. Katherine Alaimo as an Independent Nutritional Expert. Dr. Alaimo then analyzed the MDOC 2018 Cycle I Vegan Menus using diet analysis software and found that the diet provided fewer than 2000 milligrams of sodium per day and between 14% and 25% of daily kilocalories in fat. (Dkt. 66, Alaimo Report, pg. 1).

In light of this report, the Court issued an Order [64] on March 27, 2019, denying Plaintiff's motion for show cause and permitting the parties to file supplemental briefing as to Defendants' Motion for Summary Judgment [11]. That Motion, though already fully briefed, will be considered along with supplementary responses [65, 66, & 67] filed on May 3, 2019, May 10, 2019 and May 24, 2019. The Court now finds the motion suitable for determination without a hearing in accord with Local Rule 7.1(f)(2).

## LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). Movant bears the burden of establishing that there are no genuine issues of material fact, which may be accomplished by demonstrating that the non-movant lacks evidence to support an essential element of his case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Non-movant cannot rest on the pleadings and must show more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd.*, 475 U.S. at 586-87. Non-movant must "go beyond the pleadings and by . . . affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp.*, 477

U.S. at 324 (quoting Rule 56(e)); *see also United States v. WRW Corp.*, 986 F.2d 138, 143 (6th Cir. 1993).

## ANALYSIS

As a threshold matter, the Court has no jurisdiction under the Prison Litigation Reform Act, 42 U.S.C. § 1997e, to hear Michigan prisoner complaints that have not been properly grieved through all three levels of the MDOC grievance process. *Mattox. v. Edelman*, 851 F.3d 583, 590 (6th Cir. 2017). Since Ms. Fortescue is the only Defendant whose actions Mr. Blau grieved, she is the only Defendant against whom he can proceed. Defendants Washington and Doe (a catchall term for unnamed defendants) will be dismissed.

Plaintiff brings this suit under 42 U.S.C. § 1983, which provides redress for plaintiffs who can identify a right protected under federal law and demonstrate that the deprivation was caused by a person acting under the color of state law. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981). Plaintiff, as a prisoner, is protected by the Eighth Amendment's proscription of cruel and unusual punishment. The Eighth Amendment prohibits any punishment that is incompatible with "the evolving standards of decency that mark the progress of a maturing society. *Estelle v. Gamble*, 429 U.S. 97, 103 (1976) (quoting *Trop v. Dulles*, 356 U.S. 86, 101 (1958)). In order to make out an Eighth Amendment claim, Plaintiff must show that prison officials acted with "deliberate indifference" to his health and safety. *Mingus v. Butler*, 591

F.3d 474, 479-80 (6th Cir. 2010). In the dietary context, the Eighth Amendment requires that prison officials provide inmates with meals that are nutritionally adequate to sustain the prisoner's health. *Cunningham v. Jones,* 567 F.2d 653, 656 (6th Cir. 1977).

Prison officials will be liable under § 1983 where they make dietary decisions on prisoners' behalf with deliberate indifference to their health and safety. The Eighth Amendment analysis has both an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). The objective component asks whether the harm inflicted by the officials' conduct is sufficiently serious to warrant constitutional protection. *Hudson v. McMillian*, 503 U.S. 1, 2 (1992). For instance. a prison's prolonged failure to provide an inmate with food that complies with low-sodium and low-acid diet restrictions was serious enough to meet the objective prong of the Eighth Amendment analysis. *Boles. v. Aramark*, 2018 WL 3854143 * 3 (6th Cir. March 19, 2018). The occasional uncooked meal or spoiled dish will not rise to the level of a constitutional violation, however. *Heinz v. Teschendorf*, 2006 WL 2700813 at * 8 (E.D. Mich. Sept. 19, 2006). Even a punitive diet of food loaf does not violate the Eighth Amendment—however unsavory it may be—if the loaf contains sufficient nutrients to keep the prisoner healthy. *See Griffis v. Gundy*, 47 Fed. Appx 327, 328 (6th Cir. 2002); *U.S. v. Michigan*, 680 F. Supp. 270, 275 (W.D. Mich. 1988).

Taken in the light most favorable to Plaintiff, Ms. Fortescue's decision to deny Mr. Blau a low-sodium and low-fat diet satisfied the objective component of his Eighth Amendment claim. Mr. Blau was told by medical professionals that he needed to reduce his sodium and fat consumption in order to avoid further deterioration of his cardiovascular health. His life, not merely his quality of life, was therefore at stake. That Mr. Blau continued to sacrifice his health by eating unhealthy foods from the commissary does not give prison officials a license to further sabotage his health.

The subjective component to the Eighth Amendment analysis asks whether prison officials acted with a "sufficiently culpable state of mind." *McMillian*, 503 U.S. at 20. Proving that an official was merely negligent does not establish liability. A plaintiff must prove that a prison official acted recklessly, or with wanton disregard for the health and safety of the plaintiff. *Farmer*, 511 U.S. 839-840. Plaintiff must show that Defendant "subjectively perceived facts from which to infer a substantial risk to the prisoner," that Defendant "did in fact draw the inference," and that Defendant "then disregarded that risk." *Richko v. Wayne Cty.*, 819 F.3d 907, 915-16 (6th Cir. 2016).

When Ms. Fortescue alluded to Mr. Blau's medical records in her affidavit, she revealed that she did perceive facts from which to infer a substantial risk that Mr. Blau's cardiovascular health would be worsened by his diet. That she did in fact

draw that inference is made clear by her admonition to Mr. Blau to eat healthier foods. Nevertheless, she disregarded that risk and kept Mr. Blau on the standard diet.

Her first justification for denying Mr. Blau's request for a special diet was that the MDOC main line dishes had a low-sodium option that Mr. Blau could choose. (Fortescue Aff. ¶ 8). Despite this rationale, an email by Lia Gulick, an MDOC Health Services Administrator, indicated that healthy choice options selected from the menu brings the daily sodium level to 3 grams per day, not the 2 grams per day recommended by Mr. Blau's discharge. (Pg. ID 191).

Ms. Fortescue's second justification for her decision argued that Mr. Blau did not even require a diet of 2,000 mg of sodium per day. She observed that there "was no order from the physician or physician assistant at MDOC requiring this — despite repeated, recent visits by this provider and health services." (*Id.* at ¶ 8). It is unclear what "this provider and health services" refers to. It is also unclear if the medical records in Ms. Fortescue's possession includes the discharge instructions from Dr. Rash*Id.* Given the MDOC's reference to Mr. Blau's 2,000 mg of sodium discharge instructions in its response to his grievance, it is at least a fact question as to whether or not Ms. Fortescue was aware of the discharge instructions when she undertook her analysis.

Deliberate indifference "is the equivalent of recklessly disregarding the risk." *Farmer*, 511 U.S. at 836. Absent some coherent reason justifying her decision, Ms.

Fortescue appears to have simply decided to disregard the possibility that Mr. Blau's medical discharge instructions were correct, and that a diet of 2 grams of sodium per day was necessary for his cardiovascular health.

Ms. Fortescue also rationalized her decision by noting that Mr. Blau had been making unhealthy dietary decisions with his snack purchases. (*Id.* at ¶ 10). This is an odd rationale. A person's proclivity for unhealthy between-meal snacks is not a reason to deny them healthy meals. If anything, healthy meals are even more important for someone with poor impulse control between meals. Taken in the light most favorable to Plaintiff, a factfinder could find in such reasoning a purposeful disregard of Mr. Blau's dietary health. They could construe Ms. Fortescue's reasoning to be that Mr. Blau did not deserve a healthy diet because he did not make healthy choices. Or they could find that Mr. Blau had a heightened need for a standard low-sodium / low-fat diet precisely because he could not trust himself to make healthy choices. Further, Mr. Blau alleged in his June 6, 2017 affidavit that he has purchased food items from the MDOC store to "sustain [his] health and life" because he could not eat the high-fat MDOC menu items. (Dkt. 13, Pg. ID 189, Affidavit of James Blau, June 6, 2017, ¶¶ 6-7). In order to know how unhealthy his purchases were, a fact-finder would have to know whether or not he is purchasing such items in lieu of even less healthy foods.

There are genuine disputes of material fact as to whether Ms. Fortescue acted recklessly or not by causing Mr. Blau's request for a special diet to be denied. Because the denial of a medically recommended diet infringes on a prisoner's Eighth Amendment rights, Defendants' Motion for Summary Judgment will be denied as to Defendant Fortescue.

As a final matter, a plaintiff bringing a suit under § 1983 must show that the right which he seeks to vindicate was "clearly established" at the time of its deprivation. *Ashcroft v. al-Kidd*, 563 U.S. 731 (2011). "For a right to be clearly established, the contours of the right must be sufficiently clear that a reasonable government official would understand that what he is doing violates that right." *Calvin v. Caruso, 605 F.3d 282*, 290 (6th Cir. 2010).

It was clearly established law in 2016 that a prison official violates the Eighth Amendment when he or she refuses to provide a medically prescribed diet. *Byrd v. Wilson*, 701 F.2d 592, 594-95 (6th Cir. 2013) (finding prison officials violated the constitution when they failed to provide a medically necessary low-sodium high protein diet); *see also Cunningham*, 567 F.2d at 660 (holding that prison food must be adequate for a prisoner to "maintain normal health"). Defendant is not entitled to qualified immunity.

## Conclusion

As long as he remains on his vegan diet, Mr. Blau will have no claims for injunctive relief stemming from his medical diet recommendations. Since he did not exhaust his administrative remedies as to Defendants Washington or Doe, Mr. Blau's only surviving claim is that of deliberate indifference against Ms. Fortescue. Ms. Fortescue will not be entitled qualified immunity for any damages that Mr. Blau proves that he is owed through her decision to refuse his request for a special low-sodium / low-fat diet.

Accordingly,

**IT IS ORDERED** that Defendants' Motion for Summary Judgment [11] is **GRANTED IN PART AND DENIED IN PART**. Defendants Washington and Doe are dismissed.

**IT IS FURTHER ORDERED** that this case be **REOPENED**.

**SO ORDERED**.

Dated: June 26, 2019

s/Arthur J. Tarnow
Arthur J. Tarnow
Senior United States District Judge